CRAIG V. THE MONITOR PLOW WORKS *et al.*

Judgment: LIEN: PROPERTY HELD IN TRUST OR AS GIFT: EVIDENCE. Plaintiff's wife was, before her marriage, a judgment debtor. After the marriage, plaintiff, ignorant of the judgment, conveyed real estate to her without consideration and without her knowledge, and when he handed her the deed, and she informed him of the judgment, he said he was sorry, and in a few days she reconveyed to him, also without consideration. After this the property was sold upon execution on the judgment, and bought in by the judgment creditor. Plaintiff at all times exercised complete ownership over the property, collecting the rents, etc. He now seeks to have the title quieted in himself and to have the sale avoided on the ground that the conveyance was but a " testamentary devise, or a naked trust," to which the judgment did not attach as a lien when the title was in his wife. But *held* that plaintiff's own testimony showed that the conveyance was designed as a gift, and that the property was legally sold as the property of the wife to satisfy the judgment against her.

*Appeal from Cass District Court.*—HON. II. E. DEEMER, Judge.

FILED, JANUARY 21, 1889.

ON the eleventh day of February, 1879, the defendant Monitor Plow Works, obtained a judgment against Jennie Bach, who has since intermarried with the plaintiff, and is now known as Jennie M. Craig, and is one of the defendants in this action. On the sixteenth day of January, 1885, the plaintiff, being the owner of lot 9, in block 24, in the town of Atlantic, conveyed the same to his wife, Jennie M. Craig, by warranty deed in the usual form, and for the expressed consideration therein of eight hundred dollars, and on the day following the deed was duly filed for record. On the fifteenth day of June, 1887, an execution was issued on said judgment, a levy made on the lot in question by virtue thereof, and the same sold and purchased by the defendant Monitor Plow Works, and a certificate of sale given. On the sixth day of February, 1885, Jennie M.

Craig reconveyed said lot to her husband by the usual form of warranty deeds, and for the expressed consideration of eight hundred dollars, and on the tenth day of February thereafter the deed was duly filed for record. This action is to cancel the certificate of sale to the Monitor Plow Works, and to quiet the title of the lot in the plaintiff. There was a judgment below for the Monitor Plow Works, and the plaintiff and defendant Craig unite in the appeal.

*R. G. Phelps*, for appellants.

*J. B. Bruff*, for appellee.

GRANGER, J.—A fact additional to the statement above is that the appellant L. R. Craig has never surrendered the actual possession of the lot in question, but has continuously been in possession of the same through a renter. The theory upon which the appellants seek to avoid the effect of the levy and sale by the Monitor Plow Works is that there was never an absolute conveyance of the title to the wife, but that the deed was merely intended as a "testamentary devise, or a naked trust;" that it was only intended as a provision for the wife after the husband's death. It is only on condition that the facts are found to be in harmony with this theory that the appellants seek to recover.

Without in any manner committing ourselves to the legal theories of the case, under the facts as claimed by appellant, we think the testimony entirely insufficient to overcome the legal presumptions which follow a deed of conveyance absolute on its face. The only testimony in the case, barring some documentary proofs having no reference to the conveyance, is that of the plaintiffs, and we copy it in full, so far as it can be claimed to relate to the purpose of making the conveyance, and it is as follows: "I was married to my wife, Jennie M. Craig, in July, 1884. All the property she owned at the time of our marriage was simply a little household goods. She has not acquired anything since, other than from

me. In January, 1885, I deeded her house and lot 9, in block 24, city of Atlantic, Cass county, Iowa. She had no knowledge of the transaction until after the deed had been recorded, and I presented it to her. I made the conveyance to her simply to insure her a home in case of accident to me. *Interrogatory* 13. What did she ever pay, or agree to pay, for the conveyance or property? *Answer.* She never paid anything or agreed to pay anything. *Int.* 14. Who kept or held possession of the property after the conveyance? *A.* I did, just the same as previously; collected the rent, and used the money just as I had before the transfer. *Int.* 15. What did you make the conveyance to her for? *A.* Simply to insure a home in case of an accident to me. *Int.* 16. What do you mean by accident to you? *A.* In case of death; another reason,—she frequently informed me she never had a place she could call her own. *Int.* 17. What has been the condition of your health for the year last past? *A.* It has not been good. *Int.* 18. What did your wife do with the title to the property? *A.* She conveyed it back to me. *Int.* 19. Who told her to? *A.* I did. *Int.* 20. What did you pay her or agree to pay her for a such conveyance? *A.* I did not pay or agree to pay her anything. *Int.* 21. What has been the possession, and who has managed the property, since that time? *A.* The property has been in my possession, and has been managed by me since she reconveyed it; also before she reconveyed it. It has never been out of my possession. The property has been occupied by a renter ever since I owned it." Cross-examination by the Monitor Plow Works: "I have been in solvent circumstances ever since I married Mrs. Bach. The value of my property, over this house and lot, is two thousand dollars above my liabilities. I did not know at the time I conveyed this property to my wife that there were any judgment liens, or any other liens, against my wife. I first learned that there were such liens when I handed her the deed. She said she was sorry I deeded her the property, because she feared there might be something on the record against

her, but she was not' positive at the time. I am engaged in farming. I deeded this property to her in January, 1885. I do not remember what answer I made her when I handed her the deed. I regretted it myself. I do not remember any other conversations with her, except as related, about this su bject. I did not know. at that time certainly that there were any liens against her that would attach to any real estate she might own ; nor did I know of any such lien until the time I was served with notice in the Elwood case, January 31, 1885. I first asked my wife to deed me back this property at the time she did so.''

The following are the essential facts, which we think the testimony establishes : That the conveyance was made for the purpose of providing the wife a home in case of accident to him, or of his death ; that it was made without any other consideration ; that the wife had no knowledge of the conveyance until the deed was recorded and presented to her ; that the plaintiff has at all times been in possession of the premises, and that at his request the same was reconveyed to him. This is the utmost, as to facts in detail, that can be claimed by the plaintiff, Do they warrant a conclusion that the purpose was to make a devise, instead of a gift ? We think not. The plaintiff nowhere intimates such a purpose. He says, in substance, that he conveyed it to her to insure her a home in case of accident ; that she wanted a place to call her own. He quotes her statement that "she never had a place to call her own," as an inducement to his action. In what sense could she call it her own if she merely held it in trust for him. His expressed object or purpose is not in harmony with a trust transaction. The idea of a gift exactly harmonizes with his purpose. With that she had something to call her own. Counsel for appellant puts a test question in this case : '' Under the evidence as given, and under the pleading and admissions of the husband and wife, what would be the judgment of this court were the husband seeking in equity a reconveyance of his title ?'' We answer for the plaintiff, because the wife, being the

sole defendant, would by her answer admit the facts essential for the plaintiff's recovery, as she might legally do. But in the case at bar she cannot make such admissions binding on the other defendants. But suppose the case as between the husband and wife, with her answer a denial, with the testimony of the husband as in this case. We think, then, under the rule that to change the legal effect of such an instrument the proof must be clear and convincing, a court would not disturb the title of the wife.

The lien of the judgment attached to the lot at the time of the conveyance to the wife, and a reconveyance would not divest it. AFFIRMED.